IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JEFFERY ALLEN McCLELLAN, ) | |
| AIS #277145, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:20-CV-306-MHT |
| ) | (WO) |
| ) | |
| DR. TIMOTHY STONE, ) | |
| ) | |
| Defendant. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**[1]

Jeffery Allen McClellan, a state inmate currently incarcerated at the Bullock Correctional Facility, initiated this 42 U.S.C. § 1983 action on May 8, 2020.  In this case, McClellan alleges the defendant is denying him placement in protective custody at Limestone Correctional Facility because he is not an ex-law enforcement officer and in retaliation for corresponding with this court.  Doc. 1 at 2–3.  He names Dr. Timothy Stone, the Director of Psychiatry for Wexford Health Sources, Inc., as the defendant in this case.[2]

On May 26, 2020, McClellan filed a document styled as a "Motion for Emergency Injunction" which the court construed to contain a motion for preliminary injunction.  Doc.

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

[2] Wexford is the contract medical and mental health care provider for the Alabama Department of Corrections.

1

5. In this motion, McClellan alleges the defendant forced him to return to the Residential Treatment Unit at Bullock despite threats on his life from inmates in such unit in retaliation for filing this lawsuit and seeks an order from this court "that Plaintiff be moved from Bullock Corr Center and placed at Donaldson Corr Facility mental health unit due to threat on Plaintiff's life." Doc. 5 at 1–2.

In light of this request for preliminary injunctive relief, the court directed the defendant to file a response to the motion for preliminary injunction showing why it should not be granted, Doc. 6, and he has done so, Doc. 10. In accordance with the directives of the orders entered in this case, the defendant filed affidavits and relevant mental health records in support of his response. Doc. 9-1 at 2–351 & Doc. 19-1 at 2–5.

Upon consideration of the motion for preliminary injunction and after review of the response thereto filed by the defendant, the undersigned finds that such motion is due to be denied.

## II. DISCUSSION

### A. Preliminary Injunction – Requisite Elements

"The grant or denial of a preliminary injunction rests within the sound discretion of the district court." *Transcon. Gas Pipe Line Co. v. 6.04 Acres, More or Less*, 910 F.3d 1130, 1163 (11th Cir. 2018); *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002) (same). This court may grant a preliminary injunction only if the plaintiff demonstrates each of the following requisite elements: (1) a substantial likelihood of success on the merits; (2) an irreparable injury will occur absent issuance of the injunction; (3) the

injunction will not substantially harm the non-moving parties; and (4) if issued, the injunction will not be adverse to the public interest. *Long v. Sec'y Dept. of Corrections*, 924 F.3d 1171, 1176 (11th Cir. 2019); *Palmer*, 287 F.3d at 1329; *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir. 1998); *Cate v. Oldham*, 707 F.2d 1176 (11th Cir. 1983); *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352 (11th Cir. 1983). "In this Circuit, [a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to the four requisites." *McDonald's*, 147 F.3d at 1306 (internal quotations omitted); *Wreal LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (internal quotations and citation omitted) ("A preliminary injunction is an extraordinary and drastic remedy, and [Plaintiff] bears the burden of persuasion to clearly establish all four of these prerequisites."); *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (a preliminary injunction is issued only when "drastic relief" is necessary); *Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5th Cir. 1975) (grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion on each of the requisite elements).

## B.  Defendant's Response to the Motion for Preliminary Injunction

The defendant filed affidavits and McClellan's relevant mental health records in response to the complaint and motion for preliminary injunction. Doc. 9-1 at 2–351 & Doc. 19-1 at 2–5. In his affidavits, Dr. Stone addresses the decisions challenged by McClellan. After a thorough review of the mental health records, the court finds that the

details set forth by Dr. Stone in his affidavits are corroborated by the objective records contemporaneously compiled during the treatment process.

In his initial affidavit, Dr. Stone addresses the allegations made by McClellan regarding deliberate indifference to his mental health and safety, in relevant part, as follows:

> As the Director of Psychiatry for Wexford, I am responsible for overseeing the mental health medical providers at the numerous correctional facilities within the Alabama Department of Corrections system across the State of Alabama.
> Most correctional facilities have their own mental health professionals to provide mental health care services for inmates within each specific [correctional] facility.
> The psychiatrist at the Bullock County correctional facility where Mr. McClellan is currently incarcerated is Saeed Shah, M.D.
> The mental health medical providers at Bullock are currently responsible for providing the necessary mental health needs of Mr. McClellan.
> To my knowledge and recollection, I have only personally seen and communicated with Mr. McClellan on one occasion.
> I, nor any employee providing mental health at Wexford[,] can control where individuals are housed or incarcerated. The Alabama Department of Corrections determines where each specific inmate, including Mr. McClellan, will be incarcerated.
> The mental health care providers of Wexford have the ability to make cer[ta]in recommendations to the Alabama Department of Corrections, however, that is all they are, recommendations. The Alabama Department of Corrections makes the determination where each individual state inmate will be incarcerated. Wexford employees cannot dictate that any inmate be transferred from one facility to another.
> Reviewing Mr. McClellan's file, Mr. McClellan has recently been incarcerated at the Fountain Correctional Facility, Limestone Correctional Facility, and is currently incarcerated at the Bullock County Correctional Facility. Mr. McClellan has certain mental health needs that are followed continuously by the mental health staff at the Bullock Correctional Facility. Mr. McClellan's mental health chart is attached hereto for the Court's review.

Mr. McClellan has made several attempts at suicide in the past, and the mental health staff at Bullock are well aware of the suicidal ideations of Mr. McClellan.

Mr. McClellan is currently incarcerated within the Stabilization Unit at the Bullock Correctional Facility. The Stabilization Unit provides the highest level of mental healthcare that is available within the Alabama Department of Corrections system. Mr. McClellan is housed in the Stabilization Unit in a one-man cell and he is monitored frequently by both the mental health staff, physical health staff, and correctional officers at Bullock. Mr. McClellan's secured single cell is not accessible by other inmates at Bullock.

Mr. McClellan has previously been housed at the Residential Treatment Unit at Bullock. The Residential Treatment Unit is also a high level of care dormitory at Bullock. However, Mr. McClellan has advised the mental health staff that he is fearful of certain inmates within the Residential Treatment Unit and therefore McClellan has been continued to be housed in the single cell within the Stabilization Unit at Bullock.

I am aware that Mr. McClellan alleges that he has been discriminated against by not being transferred and housed at either the Hamilton Correctional Facility for the Aged and Infirmed or the Limestone Correctional Facility.

These allegations are untrue and unfounded. The Hamilton Correctional Facility does not have the mental health staff or facilities in order to properly care for inmates with mental health concerns such as Mr. McClellan. Therefore, the medical staff at the Hamilton Correctional Facility would not be properly equipped to provide necessary mental healthcare to Mr. McClellan.

Mr. McClellan was previously housed at the Limestone Correctional Facility. However, Mr. McClellan made complaints to the ADOC with regards to issues he was having with the correctional staff at Limestone and therefore he was transferred to the Bullock Correctional Facility.

Mr. McClellan is seen frequently by the mental health providers at the Bullock County Correctional Facility and the staff at Bullock are well aware of the concerns of Mr. McClellan.

The mental health staff at Bullock regularly communicate with the correctional staff at Bullock and both the correctional and mental health staff are aware of the concerns regarding Mr. McClellan and his mental health history.

The mental health wellbeing of Mr. McClellan is of the upmost importance to myself as well as the mental health medical providers at the Bullock Correctional Facility and across the Alabama Department of Corrections' system.

> The mental health wellbeing and safety of Mr. McClellan is constantly reviewed and the mental health staff at Bullock are in constant communication with Mr. McClellan with regards to his mental health well-being.
> At no time has Mr. McClellan's necessary mental health treatment been delayed, denied, or ignored.
> The Alabama Department of Corrections are aware of the mental care issues of Mr. McClellan and strive to provide a safe and secure surrounding for Mr. McClellan with[in] the ADOC system.
> In my opinion, Mr. McClellan receives excellent mental health treatment, and the mental health staff at Bullock have at all times provided Mr. McClellan with mental health treatment within the standard of care of mental health medical providers in the State of Alabama.

Doc. 9-1 at 3–7.

In a supplemental affidavit, Dr. Stone addresses McClellan's claim presented as support for his motion for preliminary injunction that the defendant or other mental health care provider has forced him to return to the Residential Treatment Unit at Bullock despite threats on his life from other inmates in retaliation for filing this lawsuit and he is therefore entitled to a recommendation for transfer to the mental health unit at the Donaldson Correctional Facility.  Initially, Dr. Stone states that neither he, "nor any other mental health care providers at the Bullock Correctional Facility, have ever retaliated against Mr. McClellan."  Doc. 19-1 at 4.  Dr. Stone further provides:

> With regard to Mr. McClellan's claim that he has been forced to return to the residential treatment unit at Bullock (RTU), this allegation is incorrect. Mr. McClellan is currently incarcerated with the Alabama Department of Corrections within the stabilization unit (SU) at the Bullock Correctional Facility. Mr. McClellan remains in a single cell in the stabilization unit. Mr. McClellan has not been returned to the residential treatment unit at Bullock. Therefore, Mr. McClellan is separated from other inmates and is, to my knowledge, being closely monitored by Alabama Department of Corrections employees and the Wexford mental health professionals.

Doc. 19-1 at 5.

## C. Deliberate Indifference — Standard of Review

McClellan contends defendant Stone has acted with deliberate indifference to his safety and health due to his housing at Bullock and the treatment provided to him for his mental health issues. Doc. 5 at 1. The defendant adamantly denies these allegations.

A prison official has a duty under the Eighth Amendment to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)); *Helling*, 509 U.S. at 31–32. A prison official may therefore be held liable under the Eighth Amendment for acting with "'deliberate indifference'" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 828. To demonstrate an Eighth Amendment violation regarding conditions, a prisoner must satisfy both an objective and a subjective inquiry. *Farmer*, 511 U.S. at 834; *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (holding that the law requires establishment of both objective and subjective elements to demonstrate an Eighth Amendment violation). With respect to the requisite objective element, an inmate must first show "an objectively substantial risk of serious harm . . . exists. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner."

*Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028–29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  As to the subjective element, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837–38; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838).

> In sum,
>
> [u]nder the objective component, the plaintiff must demonstrate "a substantial risk of serious harm." [*Farmer*, 511 at 834]. . . . Under the subjective component, the plaintiff must prove "the defendants' deliberate indifference" to that risk of harm by making three sub-showings: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Lane* [*v. Philbin*, 835 F.3d 1302, 1308 (11th Cir. 2016)], (quotation omitted). . . . The [relevant] inquiry . . . [is] whether the defendants "disregard[ed]" the risk "by conduct that is more than mere negligence," *id*. (quotation omitted)—or more simply stated, whether they "recklessly disregard[ed] that risk," *Farmer,* 511 U.S. at 836, 114 S.Ct. 1970.

*Swain v. Junior*, ––– F.3d –––, 2020 WL 3167628, *5 (11th Cir. June 15, 2020); *King v. Fairman*, 997 F.2d 259, 261 (7th Cir. 1993) (internal quotations and citations omitted) ("To sustain his constitutional claim, the inmate must demonstrate something approaching a total unconcern for his welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm.").

> The Eleventh Circuit,
>
> (echoing the Supreme Court) ha[s] been at pains to emphasize that "the deliberate indifference standard ... is far more onerous than normal tort-based standards of conduct sounding in negligence," *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013), and is in fact akin to "subjective

> recklessness as used in the criminal law," *Farmer*, 511 U.S. at 839–40, 114 S.Ct. 1970; *see also id.* at 835, 114 S.Ct. 1970 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence."). Were we to accept the district court's determination that resulting harm, the failure to take impossible measures, or even the combination of both suffices to show a criminally (and thus constitutionally) reckless mental state, "the deliberate indifference standard would be silently metamorphosed into a font of tort law—a brand of negligence redux—which the Supreme Court has made abundantly clear it is not." *Goodman*, 718 F.3d at 1334.

*Swain*, 2020 WL 3167628, at *7.

The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "The requisite mental state for prison officials is intent, or its functional equivalent, described as deliberate indifference[.]" *King*, 997 F.2d at 261 (internal quotations and citations omitted). "Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.'" *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Marsh*, 268 F.3d at 1028); *Lane*, 835 F.3d at 1307 (11th Cir. 2016) (holding that the Eighth Amendment is violated only when a correctional official "is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury."). The Eleventh Circuit has consistently held that "'[i]n order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from

cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the [mere] tort to a constitutional stature.'" *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso County Jail*, 642 F.2d 134, 136 (5th Cir. 1981), *cert. denied*, 464 U.S. 932 (1983); *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) (same).

> As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar. A plaintiff must prove that the defendant acted with "a sufficiently culpable state of mind." [*Farmer*, 511 U.S.] at 834, 114 S.Ct. 1970 (quotation omitted). Ordinary malpractice or simple negligence won't do; instead, the plaintiff must show "subjective recklessness as used in the criminal law." *Id.* at 839–40, 114 S.Ct. 1970. Indeed, even where "prison officials ... actually knew of a substantial risk to inmate health or safety," they may nonetheless "be found free from liability if they responded reasonably to the risk"—and, importantly for present purposes, "even if the harm ultimately was not averted." *Id.* at 844, 114 S.Ct. 1970. This is so because "[a] prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Id.* at 844–45, 114 S.Ct. 1970 (quotations and internal citations omitted); *see also Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) ("It is well settled that prison officials must take reasonable measures to guarantee the safety of the inmates...." (quotation omitted)).

*Swain*, 2020 WL 3167628, at *5.

### D. Retaliation — Standard of Review

McClellan also claims the defendant undertook adverse actions against him in retaliation for filing this lawsuit. Doc. 5 at 1. Again, Dr. Stone denies this allegation.

Federal law recognizes "that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' [*Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807 (1974)]. As the *Martinez* Court acknowledged, 'the

problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.' *Id*., at 404–405, 94 S.Ct., at 1807. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources." *Turner v. Safley*, 482 U.S. 78, 84–85, 107 S.Ct. 2254, 2259 (1987). "The first amendment prohibits state officials from retaliating against prisoners for exercising their right of free speech. *See, e.g., Wright v. Newsome*, [795 F.2d 964, 968 (11th Cir. 1986)]. . . . The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1241–42 (11th Cir. 1989); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). The situation is clearly complicated when the alleged act of retaliation regards the provision of medical treatment as an inmate may attempt to inappropriately influence decisions regarding such treatment "by drawing the shield of retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied* sub nom *Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).

It is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging the constitutionality of actions of correctional personnel. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied* sub nom *Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983). This is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into

matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

To demonstrate a viable claim of retaliation, an "inmate must establish . . . three elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendant's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999). With respect to the causal relationship element, a prisoner must demonstrate that the defendant intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Woods*, 60 F.3d at 1166; *Smith*, 532 F.3d at 1278.

Dr. Stone asserts that all decisions regarding the treatment and housing of McClellan were based solely on the medical judgment of the mental health staff after evaluating and assessing McClellan's mental health. The mental health records support Dr. Stone's

12

assertions. McClellan offers only his conclusory allegation of ultimate fact that Dr. Stone retaliated against him for filing this case.

## E. Preliminary Injunctive Relief

In this case, the court finds that the mental health treatment provided to McClellan does not show deliberate indifference nor does it indicate any act of retaliation. Thus, as to the first prerequisite for issuance of preliminary injunctive relief, the court finds that McClellan has failed to show a substantial likelihood of success on the merits, and his motion for preliminary injunction is due to denied for this reason alone. Nevertheless, the court also finds that McClellan has not met his burden of establishing a substantial threat that he will suffer the requisite irreparable injury absent issuance of the requested preliminary injunction nor that the balance of potential harm weighs in his favor. On this latter element, the court discerns that the potential for harm weighs more heavily in favor of the defendant as issuance of the injunction would have an unduly adverse effect on the ability of mental health personnel to exercise their professional judgment in determining the appropriate manner in which to provide treatment to inmates and would inappropriately shift the authority to make such treatment decisions to inmates who are completely devoid of medical training. Finally, the public interest element of the equation is, at best, a neutral factor at this juncture. McClellan has therefore failed to meet his burden of demonstrating the existence of each element necessary to warrant issuance of preliminary injunctive relief in this case.

## IV.  CONCLUSION

A preliminary injunction is "not to be granted unless the movant clearly establish[es] the burden of persuasion as to all four elements."  *CBS Broadcasting v. Echostar Communications Corp.*, 265 F.3d 1193, 1200 (11th Cir. 2001) (internal quotations omitted).  McClellan has failed to carry his burden of persuasion on the four requisite elements as is required to establish entitlement to preliminary injunctive relief.

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The emergency motion for preliminary injunction filed by the plaintiff be DENIED.

2.  This case be referred back to the undersigned Magistrate Judge for further appropriate proceedings.

On or before **July 14, 2020**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions contained in the Recommendation to which his objection is made.  Frivolous, conclusive, or general objections will not be considered by the court.

Failure to file written objections to the proposed factual findings and legal conclusions set forth in the Recommendations of the Magistrate Judge shall bar a party from a *de novo* determination by the District Court of these factual findings and legal conclusions and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v.*

*Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact [and law] and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done this 30th day of June, 2020.

/s/  Charles S. Coody
UNITED STATES MAGISTRATE JUDGE